The 1795 Dexcom, Inc. v. Abbott Diabetes Care, Inc. Good morning. May it please the Court, William Adams for Dexcom. The District Court wrongly declined to enter a preliminary injunction requiring Abbott to withdraw its IPR petitions that it filed in violation of the party's forum selection clause. Abbott invoked the Dexcom to litigate its infringement claims over the asserted patents in Delaware, and then it turned around and, at the same time, pursued challenges to validity as to those same patents in the PTAB. This Court has repeated- Can we talk about the probability of success, that is, whether the forum selection clause really does apply here? Do you agree that the forum selection clause has to have the same interpretation for the covenant period and for the post-covenant period? No, Your Honor. The forum selection clause does not apply to the covenant period. The covenant period, which expired in March of 2001, had a no-challenge provision. That's an F-1 and F-2. It set up exceptions in F-3 and F-4. Wait a second. The forum selection clause didn't apply during the covenant period? That's correct, Your Honor, because Section F-3, which is at page Appendix 346, allows for IPR proceedings during the- It allows only if one side violates the no-challenge provision. So F-1 and F-2 are the baseline. There should be no challenges. We're familiar with that. You're familiar with that. Very familiar. But wait a minute. He wants to ask you another question. So what is it in the forum selection clause language that says it doesn't apply during the covenant period? There's nothing in the forum selection clause itself which doesn't say it applies in the provision. The way the district court actually ultimately read this was to say that F-3 and F-4- Okay, but forget about F-3 and F-4 for the moment. The forum selection clause on its face applies both during the covenant period and afterwards. Yes, Your Honor. There's nothing in the forum selection clause itself which carves out or differentiates between the covenant period and the non-covenant period. So then in terms of interpreting the forum selection clause, it seems to me it has to have the same meaning during the covenant period and afterwards. And if that's true, it is also clear from the language of the provisions of the contract that during the covenant period it is not permissible under certain circumstances, which seems to me necessarily to imply that the forum selection clause is not dealing with high PRs. Respectfully no, Your Honor. The forum selection clause does specify that all disputes arising out of the agreement shall be filed in the District of Delaware. And this court in Nippon in the covenant period that is clear that under some circumstances, IPRs can be maintained, correct? Yes, Your Honor. And it's also clear that's in F-3. F-4 also does provide that certain other disputes including post-grant review proceedings could be filed under F-4. But obviously those could only be in front of the PTAB. And it's very clear that could happen during the covenant period. So the forum selection clause in J-1 doesn't cover those proceedings. Otherwise there would be no way to file PGRs during the course consistent with the forum selection clause. So they're separate. The forum selection clause is what kicks in. So the baseline is F-1 and F-2. There shouldn't be any litigation during the covenant period. Nothing should be happening. Wait, wait, hang on. I'm not sure that's right. It says during the covenant period there's no challenge to any patent or patent application. But there could be other litigation, right? Well, there could be other litigation. I think F, maybe it's F-5, does allow for continuing the challenges that were pre-existing the settlement. Are you saying that the only kind of litigation that can occur under a license agreement is just challenges to patents and patent applications? Well, there's also, just to be clear, there's a subsection D, which is also the covenant not to sue. And it's broader even than the no challenge provision in section J-1. So the parties did not sort of envision that there would be no litigation that would trigger the forum selection clause during the covenant period. That's ultimately what they're saying. So they contemplated that the forum selection clause would apply during the covenant period. No, Your Honor. So the parties contemplated that the forum selection clause would kick in after the covenant period expires. What's the basis for that? Because you have to read section F and section J. Section F-1 and F-2 says that the forum selection clause applies to that. And there's no challenges. That's the baseline. What if somebody violates that and files a challenge? Does the forum selection clause apply to that? No, Your Honor. That's where F-3 kicks in. So you could bring a challenge anywhere you want. Our view of F-3 is that all gloves are off. Once F-1 and F-2 are violated, if one party breaches F-1 and F-2, then F-3 allows the other party to bring other challenges that it would like. And it's not constrained by the forum selection clause in F-3. What if the other party violated the covenant? Wouldn't the party trying to seek to enforce the agreement have a cause of action? Where would they file that? Anywhere they want? They would file it. Our view is that they could file it wherever they want to do. And I think if you look at the forum selection clause, everyone's consented to Delaware. Let's assume that we reject your concern and we conclude that the forum selection clause necessarily applies during the covenant period also. Let's make that assumption. Under those circumstances, it is clear, is it not, that the forum selection clause doesn't bar IPRs? No, Your Honor. The forum selection clause would still bar IPRs if you're looking at it on its terms because it directs that all disputes arising out of the agreement shall be filed in Delaware. But it doesn't permit IPRs during the covenant period under certain circumstances, right? I thought we were accepting that that, if we accept that the forum selection clause applies during the covenant period and applies outside the covenant period. If it applies during the covenant period, the only way to interpret the forum selection clause is that it doesn't cover IPRs. Respectfully, I disagree, Your Honor, because the forum selection clause requires that all disputes arising out of relating to the agreement, which includes validity of patents, must be filed in the District of Delaware. You're just not addressing my question. The only exception. You are not addressing my question. We have assumed for the moment that the forum selection clause applies during the covenant period. Yes. And yet, during the covenant period, the contract explicitly says that under some circumstances IPRs are permitted. Therefore, IPRs cannot be inconsistent with the forum selection clause. I disagree, Your Honor, because you have to still read to the extent permitted. If you read this all, obviously I disagree with your premise that F3 and F4 allow, or IPR proceedings. But if you do think that F3 allows for IPR proceedings, if the forum selection clause doesn't apply during that period, we think that you also have to look back to the law of the case. It does apply during that period. That's the assumption of the question. I understand, Your Honor, but if you look back to the law of the case, the law of the case here is that, and this is from the Western District of Texas. You want to talk about other things than what I want to talk about, which is probably not useful. Sure, Your Honor. So the way we read these provisions together is that the F3 and F4, they apply only during the covenant period, which expired in 2021. That is what the district court ultimately concluded. That's correct. That's what the district court ultimately concluded. If the forum selection clause applies during the covenant period, then bringing in IPR is not inconsistent with the forum selection clause. Your Honor, but the reason... The way you're arguing your case suggests that the forum selection clause applies one way during the covenant period and one way after the covenant period. But there's nothing in the forum selection clause that says that. Correct, Your Honor. We don't think that the forum... Our view is that the forum selection clause does not kick in until after the covenant period. And that's because the default... Can I ask you a question? Do you agree that F3 is not limited to proceedings at the PTO? F3 is... That's correct. It's not limited to proceedings at the PTO, Your Honor. That's correct. Okay. Do you agree that the first sentence of the choice of forum says that the United States District Court for the District of Delaware shall have exclusive jurisdiction over any dispute arising from or under or relating to this agreement? Right? It doesn't say, you know, except for what's said in F3, right? That's right, Your Honor. So if somebody were to file a suit under F3 during the covenant period and they wanted to file it in district court, wouldn't they be limited to Delaware? That's correct. That's correct, Your Honor. Yeah. That is correct. But I think you can harmonize F3 with this and say during both the covenant period and the post-covenant period that challenges have to be filed in the District of Delaware. We had a very... We had a generous interpretation. Our interpretation is less generous interpretation, right? That you could have... F3 would allow for IPR proceedings during the covenant period. You could apply F... You could apply J4, the choice of law provision, to that F3 provision. We'd still win because now we're in the post-covenant world and there's no permission to have an IPR proceeding. And the District Court of Texas applied this forum selection clause to preclude, to insist that our infringement claims on the same patents go to Delaware. And so now we have a situation contrary to what happened in Nippon... This court's decisions in Nippon-Chinookoo and Texas Instruments where there is a divide between the challenges as to validity and infringement. One has to be in the District of Delaware and the other has to be in... Isn't so limited. And respectfully, that's not what the parties envisioned in this agreement. It was either channeling all or nothing, post-covenant period, to the District Court. Now, of course, we didn't think that any of the patents, these patents, were not licensed. That was... Back to Judge Hughes' question. You're trying to give a different interpretation to the forum selection clause during the covenant period than after the covenant period. Correct? Our primary position is that the forum selection clause didn't apply during the covenant period. It was all gloves are off if someone's violating F1 and F2. But you just said to me earlier it does apply during the covenant period. That's what I heard you... I said there's nothing expressed in the text of the forum selection clause that differentiates between the covenant period and the non-covenant period. That's absolutely correct. If anything, we had a more generous view of F3, which would allow for IPR proceedings. But let's apply the forum selection clause to the F3. And in that world, all the disputes related to the agreement have to go to the District of Delaware. That... I mean, that... Still, what you're arguing, you can't have it both ways. You seem to be saying that it did apply during the forum selection clause... During the forum selection... The forum selection clause did apply during the covenant period, but then it didn't. That's very confusing. I'm offering... I'm saying either interpretation leads to... There are alternate interpretations, which both would allow for determination of likelihood of success. Either the forum selection clause doesn't apply to F3, which is during the covenant period, or if it does apply, it means that only those challenges that are in F3 have to go to the District of Delaware. How do you disagree that the parties intended that district court litigation doesn't have to be brought in Delaware during the covenant period? How could that be? Our view is that they're read independently, that the F1 and F2... Well, there might not be personal jurisdiction there. I mean, obviously, there are limits on where it could be brought, consistent with other principles of law. But our view is, and the district court ultimately found, that Abbott's textual arguments failed. Just to sort of recap, Abbott presented two textual arguments on the merits. The first argument was whether IPRs relate to the agreement within the forum selection clause. The district court agreed with us. IPRs relate to the agreement within the meaning of the forum selection clause. That's at Appendix 1419. And then the second argument that Abbott made was the challenge clauses permitted the IPRs. And the district court rejects that argument as well at Appendix 1494 to 1495. The only thing that the district court relied upon was its sort of late-breaking interpretation that the forum selection clause couldn't apply because the IPRs couldn't be brought in Delaware. But that was wrong as a matter of law because it misread what the dispute is. The dispute that's subject to the forum selection clause is the challenges to validity. We know under Nippon-Chinaku and Texas Instruments that that means, and this court's decision in Dodo case, that that means that validity challenges are also channeled into the forum selection clause. And the district court didn't have any response to that. And so ultimately... Because the language in these cases differs dramatically. At least one of those cases specifically includes or references administered tribunals. Yeah, sure. We don't have that here. That's correct. There's no administrative tribunal language. But the Texas Instruments, General Protect, and Dodo case languages all talk about disputes arising out of or in connection with or arising under a license agreement. And the language of those, the forum selection clauses in those three cases, is materially identical to the forum selection clause here. I suspect they don't have these provisions that allow IPRs to go forward during part of the licensing agreement. Yeah, that's bespoke to this agreement. It doesn't have the... Which then begs the question of whether you intended to allow IPRs under this licensing agreement rather than funneling all cases to Delaware. Yeah, no. The language of the forum selection clauses in those cases does not answer the interplay between the F3 and F4 and the forum selection clause in this case. But I do think the best way to read all of these together is to either treat them separately, saying F3 is an all gloves are off sort of situation. You breach, we can do whatever we want. Or if you're not buying that, which it seems like you're not, then to apply the forum selection clause, the first line of the forum selection clause, to preclude the IPRs in the F3 world. If it was so clear, if it was so clear in reading this agreement, that IPRs could not be brought before the PTO consistent with the forum selection clause, how come it took you months to discover that and to make a request for a preliminary injunction? Sure, Your Honor. We think we filed at a reasonable time such that we filed before institution of the IPRs and so that our motion for a preliminary injunction was... It was a lot of work that happened at the agency in connection with institution. But there was no additional work done by Abbott. After Abbott filed its petitions, there was nothing that it did. And so this court's cases and your sister circuit's cases, look at the reason that there was a passage of time. Was there an indifference to the asserted harm or was there prejudice? No. But my question is if it was so clear, why wouldn't you file, object to the IPRs at the outset? How many months was it between the filing of the IPR and your objection to it? It was five months between the filing of the IPR and our objection and then an additional month until we filed a claim and alleged breach. And there's an additional month until we... If it was so clear, why did it take you five months? Your Honor, we don't think that we needed to file any earlier than we did because it was teed up in time for institution. Remember the harm here, the key harm here is loss of our... Didn't you file all the opposition papers on the merits as to why the IPR shouldn't be instituted? We did file papers. We did file preliminary... Ultimately, we had... There was... Respectfully, that's just not the... If you look at decisions in the arbitration context as an analogy, the courts... I'm not really asking about what is going on in those cases in the legal press. When did you file those? Did you file your papers saying this shouldn't go forward simultaneously with your defense on the merits? Because that would make sense to me. But I thought it was you filed your opposition on the merits and went forward with the petition process and then later in the game said, oh, no, this shouldn't go. So in August of 2022, we filed the preliminary patent owner response, which is obviously in opposition to institution. And as I was trying to say, in the analogous context I think of arbitration disputes, courts have held that filing a motion to dismiss does not preclude the later filing of a motion to compel. Because... It's not a question of preclusion. It's a question of looking at this and applying some common sense to it. If you thought that the forum selection clause barred this, it's inexplicable that you didn't raise that at the outset and you waited five months to raise it. Respectfully, Your Honor, sure. Could we have filed earlier? Absolutely. We could have filed on day one. But I don't think this court should be... Respectfully, it should be setting a precedent that encourages litigants to run to court to try to get a preliminary injunction. The case law says you should look to see the reason for the passage of time. Was there any indifference to the asserted harm? You didn't necessarily have to ask for the preliminary injunction. You could have just filed a pleading before the PTO saying, this is not permissible because of the forum selection clause. You didn't even do that. No, Your Honor, but we didn't... The reason why you didn't do it is because you also have this alternative position that you don't think it actually applies because you don't think the license applies? It was true. Initially, at that time, there was uncertainty. For some portion of that time, there was uncertainty as to whether the patents were actually licensed patents. The District Court of Texas, in transferring the case, then made the determination that the asserted patents are subject to the forum selection clause. And we accept that for the present motion and for this appeal as law of the case. And so there was some uncertainty during that period as to whether the forum selection clause would apply to these license patents. But that's law of the case. But the issue is, Your Honor, yes, we could have filed earlier, but we didn't have to. And we think it was prudent to wait to have the motion teed up for when there's institution. Because if, in fact, these IPRs had not been instituted, then there would have been no need for a preliminary injunction. The harm would have abated. And most importantly, the harm here is the different burdens of proof. It's ultimately, obviously, a clear and compelling evidence standard in the district court, a lower preponderance standard at the PTAB. I don't think the PTAB would agree with you. If they'd gone through all this work and instituted it, and then you got a preliminary injunction against them, and you never asked them to dismiss in the first place, I think they'd be pretty upset about that. Well, but respectfully, Your Honor, this court has repeated, at least on two occasions, in Nippon-Shinaku and in Dodo case, has required parties to withdraw their IPR petitions and to seek to terminate the proceedings, even after institution, to respect the party's bargains. The Supreme Court in Atlantic Marine says that the – gives paramount importance to the party's agreement to select their form. So those cases in which there was a delay in raising the issue? I'm sorry, Your Honor, I missed the first part. Were those – Nippon and other cases, were those cases in which there was a five-month delay in raising the issue? No, there was no issue of delay in either of those cases. But then, again, here, it's not just the passage of time that is critical as a matter of law. What's critical as a matter of law is whether there was an indifference to the asserted harm. There was no indifference on Dexcom's part to the asserted harm because we were actively resisting institution of the IPRs. And if the IPRs had not been instituted, there would be no harm from applying the differential standards of review. And secondly, there was no prejudice to Abbott. Abbott filed its petitions, did no further work until institution. And meanwhile, in the district court, the infringement and validity cases were stayed. So under the – I think we're about out of time. We're way over. We'll give you two minutes. Thank you, Your Honor. Mr. Wilcox. Thank you, Judge Dike, and may it please the court. I think the court's questions are hitting on exactly the key problem with Dexcom's position, which is that the forum selection clause on Appendix 353, by its terms, applies the same during the covenant period and after the covenant period, which means that Dexcom's interpretation sets up an irreconcilable conflict between the forum selection clause and the challenge clauses in F3 and F4. Because under Dexcom's view, the forum selection clause would bar IPRs when under the challenge clauses they're expressly permitted. This court is supposed to interpret contracts so that they are read in harmony and there's no conflict between the provisions. So is this kind of specific language and your specific interpretation of this language why this case is different from Nippon and our other cases that find that forum selection clauses, fairly broad ones, can prohibit IPRs as well, even without mentioning them? Yes, Judge Hughes. There is no challenge clause like the challenge clause here in those cases. And the other difference between this case and those cases is the to-the-extent-permitted-by-law language that the district court focused on in its later ruling in Appendix 1630, which also didn't exist in those cases. So between that to-the-extent-permitted-by-law language, which IPRs are not allowed to be filed in the District of Delaware, and under Supreme Court cases like oil states, it's not simply the same dispute being filed in a different forum. The very reason IPRs don't violate Article 3 or the 7th Amendment is because they're fundamentally different disputes with different historical analogs. So for that reason alone, the forum selection clause wouldn't apply. But you know that's right because of the challenge clauses, and you have to reconcile the forum selection clause with those challenge provisions to read the contract in harmony. What if this contract didn't have any of these references, I think they're in F3 or F4, to IPRs or post-grant reviews, and we still just had the same language? Would it preclude an IPR under our precedent? It wouldn't, Your Honor. Again, those cases, Dodo case and Nippon, did not have this to-the-extent-permitted-by-law language. What if we don't agree with the to-the-extent-permitted-by-law analysis, and we don't think that that alone mandates that IPRs can be filed? Well, I think you still would need to interpret the contract as a whole and try and reconcile it with the challenge clauses, and I think that how you can get there... F4 doesn't exist. Yeah, if F3 and F4 don't exist, and the to-the-extent-permitted-by-law language doesn't exist, I'm left with... No, no, it exists, but we don't read it the way the district court did. But you don't read it the way the district court did. I'm left with only one argument at that point, Judge Stoll, which is in Dodo case, the reason why that contract, which had language like this, the dispute arose under or related to the agreement, was because Dodo case was using the IPR to challenge whether it had ongoing royalty obligations. So the IPR dispute definitely related to the agreement, because the entire purpose of the IPR was to get rid of the royalty obligation. Here, Abbott has no royalty obligations under the party's agreement, so there will be no change in the party's rights and responsibilities under the agreement by the outcome of the IPRs, and we know, because DEXCOM has never mentioned the forum selection clause to the PTAB, that there's not going to be any decision by the PTAB about anything related to the license. So this case is distinguishable for that reason as well. So I think we have multiple roads to victory, whether you look at the challenge clauses, to the extent-permitted-by-law language, or just the factual differences between this case and Dodo case, which suggests why there would be a difference in how you read the related-to language, and whether it applies to the specific circumstances here as opposed to the circumstances in Dodo case. So we have a jury verdict now in the Delaware case? Correct, Judge. There is a jury verdict. And what was the result of that? Some patents were licensed, some weren't? Yes, so only two patents were at issue at the trial. One of them is a patent for which the PTAB did not institute review, so it's not really relevant to this case. And then there was one patent that was a patent that is at issue in the PTAB. It was found that one claim of that patent is licensed. The one claim we asked the jury to find was licensed. For the other three patents that are at issue in the PTAB, because of pretrial rulings by the district court, there's no dispute at this point, at least pending an appeal, that they are not licensed. And that wasn't an issue that the jury was asked to resolve because it was taken care of by the district court on summary judgment in its interpretation of a different provision of the contract, and whether it applies an obviousness standard or an obviousness-type double patenting standard. So that's the current status of the case. And not only that, but of course the district court has definitively ruled that DEXCOM loses on the merits of its contract interpretation issue, which also is a change in circumstances from when this appeal was first filed. But let me also just briefly touch on the delay point, Judge Dyke. In these court's cases, as my friend on the other side noted, Nippon, Dodo Case, and others, there wasn't any type of delay like we have here. In Nippon, the party came and sought a preliminary injunction within three weeks of the IPRs being filed. In Dodo Case, it was a month. In Texas Instruments, it was seven days. And the reason the parties act so quickly is because the harm that the preliminary injunction is supposed to rectify when you have a forum selection clause is the harm from being forced to litigate in multiple forums at once and being forced to litigate in a forum that you didn't choose to litigate in. So if DEXCOM really thought that there was a problem here, it was suffering the harm immediately. But what it did is... Can I ask you, so is the hypothetical thinking about the irreparable harm by delaying it then shows that in fact you weren't harmed, you may have even embraced that other forum? Is that what the argument is? That DEXCOM embraced that other forum? Well, yeah. I mean... It's the argument that they embraced the forum, and it's an argument that it shows that they aren't suffering the type of irreparable harm that you would expect for a party that needs a preliminary injunction. They don't view it as a harm. Yeah, they don't view it as a harm. And that seems to be what courts have done in cases like Bethune-Cookman. It's what this court has recognized may be a reason to find no irreparable harm in decisions like Hybrid Tech, where this court said a delay may be so significant in the district court's discretion as to preclude a determination of irreparable harm. And this court said the same thing in Palmer Technologies, where it said this kind of delay, where you are suffering the harm that you care about, but you're not taking any action, negates a finding of irreparable harm. Now, they say the real harm is a different burden of proof. This court hasn't recognized that as a harm in either Dodo case or Nippon. And they didn't need a preliminary injunction to get ahead of that harm, because the trial in this case was scheduled for July of 2023, which is when it actually happened. The IPR decisions aren't coming down until October or November. So if that's the harm they were worried about, what they should have done is litigated in the district court without seeking a preliminary injunction at all. If they had won, they would have been able to move for a permanent injunction. It would have been in place before the IPR proceedings wrapped up. Now, what I think they might say is, well, but the PTAB's less likely to dismiss, even if Abbott asks them to, once there's been an institution decision. But that, again, actually just goes to their delay. Because by waiting six months, they didn't even seek a PI until the very week that the PTAB was going to issue its institution decisions anyway. So there was no way, by the time they filed their IPR motions, or sorry, their PI motions, that there was going to be a decision before institution. So what they did is they showed indifference by filing 385 pages of briefing, spanning 75,000 words, without saying a word to the PTAB about irreparable harm. So this court can affirm for that reason alone, as this court recognized in Hybertech, as the Third Circuit recognized in cases like Lannon, and as many other courts have recognized. But it can also affirm for the reasons that we've discussed, because the district court's contract interpretation is right, so there's no likelihood of success. If the court has further questions, I welcome them. Otherwise, I appreciate the court's time. Okay, thank you. Mr. Adams, you've got two minutes. Thank you, Your Honor. Again, just back to the likelihood of success and reading the provisions together, I would suggest that F3 and F4 are specific carve-outs, that there's a specific that governs circumstances during the covenant period, not outside the covenant period. And that's different. The specific governs the general. The general is the forum selection clause. If you don't agree with me on that, there's nothing in F3 that says that IPRs shall be permitted. There's clearly an F4, which talks about time limits and things like that, that you must allow, that are permitted to be filed. F3, you can harmonize with my interpretation. Haven't you argued that F3 allows filing of IPRs? That was our position, that in the covenant period, when all gloves are off, F3 would allow for IPRs. F3 relates to IPRs as well as district court cases. I just want to make sure. That was our position, but I think you could also, if you don't agree with that, I would apply the first sentence of the forum selection clause. That would bar, under our interpretation, would bar all IPRs. Our view is generous toward IPRs under F3. It could bar all IPRs by applying the forum selection clause. And then F4 would just be a carve-out, because it's dealing with time limits. The definition of challenge includes IPR, right? Yes. The challenge clause does prohibit IPRs in F1 and F2. That's exactly right. But again, either a specific governance in general, that's the first interpretation, or you can harmonize them. If there's any ambiguity, you can still harmonize them. To the extent permitted by law, language is referring to disputes that can't possibly be brought in the District of Delaware, that's like challenges to foreign patents. The District Court found that in Appendix 18, Note 8. And then on the delay, the key point, and it's from the Palmer case, is whether any delay or passage of time negates the irreparable harm. There's no negation of the irreparable harm here, because the harm to us is the application of the lower standard of proof. That happens at the end of the case. That hasn't happened yet. And so we respectfully suggest that we were prudent in waiting until the eve of institution and not rushing to court immediately upon filing the petitions. Thank you very much. Thank you, Mr. Adams. Thank both counsel for cases together. That concludes our session for this morning.